JONES, JUDGE:
The claimant, Walter E. Bradfield, Jr., is a resident of Sistersville, in Tyler County, West Virginia, and is employed in the Security Department of Mobay Chemical Company near Moundsville, in Marshall County, West Virginia. He also is a Constable for Tyler County and a part-time policeman in Sistersville. The claimant is interested in police work and has kept in touch with the City and County police through a short-wave radio installed in his automobile, a 1973 four door Plymouth Fury. Before leaving for work on the evening of Sunday, August 26, 1973, he called the Sistersville police department and was informed that there had been an armed robbery in the Wheeling area and possibly a kidnapping and stolen car. On his way to work the claimant heard on the radio that the kidnappers were being pursued south on State Route No. 2, south of Moundsville. When he arrived at Mobay, he telephoned the Marshall County Sheriffs office and was informed that a family had been kidnapped and their car stolen. He further learned that a roadblock was being set up at New Martinsville and that all possible help, including his, was needed. Being about one-half hour before his shift began at midnight, the claimant went to the site of the roadblock and his car was positioned along with others by a State Policeman, Corporal B. E. Kirtley. At the hearing Corporal Kirtley testified that he was glad to have the claimant’s help and so told him at the time.
Earlier the same evening two escapees from the Junction City Treatment Center in Ohio had taken hostage George Dunn, his wife *131 and four small children, of Valley Grove, West Virginia. One of them held a knife at the side of Mr. Dunn while he was made to drive his Pontiac automobile; the wife and children were crouched on the back seat and floor; and the second escapee flourished a revolver as he watched out the rear window. Fearing for his life and the lives of his family, Mr. Dunn obeyed instructions during the harrowing experience which followed.
When the kidnappers’ vehicle neared the New Martinsville roadblock, it suddenly turned and headed back north. All police cars joined in the chase, and Trooper W. M. Fox, who was off duty and arrived at the roadblock in civilian clothes and on foot, got into the claimant’s car and they took off in pursuit. Trooper Fox manned the radio, and while he could not communicate with other State Policemen, whose radio was on another frequency, he was able to keep in touch with County and City police. Another roadblock was set up at the Mobay Chemical Plant, but the fleeing car was able to swerve onto the Mobay property and around the roadblock in the center of the intersection. At a third roadblock south of Moundsville, the Dunn’s Pontiac car left the highway, crossed the median strip and proceeded the wrong way on the south-bound lanes. At this point the claimant’s car was right behind the Dunn car, and he and Trooper Fox had seen the brandished gun in the back window. The claimant had tried several times to pass the Dunn car, but it would go to the center of the highway and he could not pass. When the Dunn car crossed the median strip, the claimant took the same course and continued to stay close as the speeding cars came into Moundsville. At this time State Police Car No. 166, driven by Corporal J. K. Gabbert, passed the claimant’s car, and on a bridge near Eleventh Street in Moundsville it was able to force the Dunn car into the right-hand curb, ramming into the left front of the car and just cutting it off from turning right into Eleventh Street. Almost simultaneously the claimant’s car rammed into the rear of the Dunn car. A moment later the car of Vincent A. Church, a New Martinsville police officer, slammed into the rear of the claimant’s car. This sudden blow caused the claimant’s pistol to accidentally discharge, shattering the windshield. Corporal Taylor’s Vehicle No. 151 was struck in the rear. Officer Church sustained a bullet wound in the left ankle, and a bullet grazed the left arm of George Dunn.
Trooper Fox testified that during much of the chase the claimant *132 was driving at speeds between 80 and 90 miles per hour. Shots were fired at each of the roadblocks, and tension and excitement had risen to a high pitch as the end of the chase came with considerable suddenness. The pursuers were dealing with armed and dangerous men and the final confrontation was no place for studied deliberation. The claimant testified that as they approached the bridge and Eleventh Street, Trooper Fox said, “Ram him, Skip. That’s the only way we’re going to get him. Go ahead and ram him now.” Officer Church confirms this testimony, testifying that he heard over the radio somebody say, “Ram him, Skip.” When asked whether he had used those words, Trooper Fox testified, “The only thing I might have said was, ‘He’s going to ram him, Skip,’ when 166 come around and hit him from the front.” That answer was followed by this:
Q. “Do you think Constable Bradfield could have stopped his car without hitting the suspect?”
A. “Not really. He was too close on him.”
Counsel for the respondent takes the position that the claimant was a volunteer and not acting under the direction or command of anyone in the Department of Public Safety. The powers of a State Police Officer as set out in Section 11, Article 2, Chapter 15 of the Code of West Virginia, including the right to command the assistance of any able-bodied citizen of the United States, appear not strictly to apply to this situation. However, there appears to be a great weight of authority that a police officer may summon to his assistance any person where he deems it necessary to effect an arrest. 70 Am. Jur. 2d 152. Quoting from the same page of that text: “Instead of organizing a formal posse comitatus, any police officer may summon to his assistance any bystander, or any number of bystanders, when he deems it necessary to effect an arrest or to recapture an escaped prisoner, and such summons invests those called upon with full authority to render him all needed assistance.” Regardless of Officer Fox’s intention or belief as to his authority or the claimant’s duty to obey, the Court believes that there was such a strong appearance of authority in the commandeering and direction of the claimant and his automobile that the claimant was justified in believing that he was legally required to render assistance to the extent of his ability. In other words, the Court believes that the claimant should not be required to judge the legality of his rendering assistance, and then act upon his own responsibility.
*133 The Court further finds that the claimant’s damages proximately resulted from the helpful and hazardous assistance which he rendered to the respondent’s officers in effecting capture of the fugitives. The original estimate of repairs to the claimant’s vehicle was Eight Hundred Eighty Dollars Forty Cents ($880.40). The final repair bill was Seven Hundred Five Dollars Fifty-nine Cents ($705.59), which appears to the Court to be fair and reasonable. This claim was assigned by claimant Bradfield to claimant Insurance Company, reserving the $100.00 deductible portion of the claim, by a release and subrogation agreement between the parties dated October 9, 1973, which assignment is a part of the record in this case.
Based on its findings and its understanding of the law as set out hereinabove, the Court is of opinion that the claimants are entitled to recover, and awards are hereby made as follows: To the claimant, Walter E. Bradfield, Jr., $100.00; and to the claimant, Nationwide Mutual Insurance Company, $605.59.
Judge Petroplus participated in the decision of this case, but his resignation from the Court was effective before this opinion was prepared and approved.
Judge Garden did not participate in the decision of this case.
Awards: Walter E. Bradfield, Jr. — $100.00. Nationwide Mutual Insurance Company — $605.59.